**Doris L. STAMM, Admx. of the Estate of Mahlon H. Stamm, Deceased, Plaintiff,**

v.

**Lester TRIGG, Sheriff, et al., Defendants.**

**No. C 72–451.**

United States District Court, N. D. Ohio, W. D.

Nov. 12, 1973.

**84**

Martin W. Williams, Toledo, Ohio, for plaintiff.

John R. Eastman, Toledo, Ohio, for Trigg, Commissioners, Allen, Peebles & Lauber.

Thomas J. Norman, Jr., Toledo, Ohio, for Murbach & Cotterman.

Harold C. Moan, Toledo, Ohio, for Detwiler Hospital.

Richard B. McQuade, Jr., Wauseon, Ohio, for Murbach & Cotterman.

## MEMORANDUM and ORDER

WALINSKI, District Judge:

This cause came to be heard on the motion of defendants Cotterman and Murbach to dismiss the complaint pursuant to Rule 12, Federal Rules of Civil Procedure. We have before the Court their brief in support of the motion, as well as a brief in opposition from the plaintiff. No answer to the complaint has yet been filed.

Plaintiff is the administratrix of the estate of Mahlon H. Stamm. In her amended complaint, she alleges that her decedent was incarcerated in the Fulton County Jail during June, July and August, 1971; and that at the time of his incarceration, both he and his immediate family notified the defendant Sheriff and County Commissioners that he was under the care of a physician for a peptic ulcer and required constant medical care as well as a special diet. The plaintiff further alleges that throughout this period, the decedent repeatedly sought to be given his special diet or, at a mini-

mum, important parts of the diet and that these requests were denied. Plaintiff further claims that Mr. Stamm grew progressively weaker during this time; that he was refused needed medical attention; and that on August 7, 1971, the decedent was allegedly found in his cell in a stupor and in a weakened condition. The amended complaint then alleges that the decedent was taken to the defendant hospital where he was placed under the care of the defendant doctors until the time of his death on August 19, 1971. Plaintiff alleges that the doctors continued to permit the decedent's condition to deteriorate through misdiagnosis and that the hospital failed to provide needed care.

The complaint is composed of three counts. The first claim is against the defendant Sheriff and County Commissioners and is based on 42 U.S.C., § 1983. Jurisdiction of this Court is invoked under 28 U.S.C., § 1343. This count alleges that certain acts and omissions of these defendants violated the decedent's rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Interpreting the complaint most favorably to the plaintiff as we must, this count appears to imply that these defendants acted under color of state law. Admittedly this part of the claim is not clearly stated.

The second and third counts are bottomed purely on state law and constitute common law negligence claims based on wrongful death. Defendants Cotterman and Murbach are named in the second count; defendant Detwiler Memorial Hospital is named in the third.

In their motion to dismiss, defendants Cotterman and Murbach[1] argue that this Court lacks jurisdiction over the claims made against them in the second count of the complaint. There appears to be no question that diversity of citizenship is lacking; all the parties appear to be residents of the state of Ohio. Therefore, if this Court does have jurisdiction over the claims against the movants, it is because the plaintiff has properly invoked the doctrine of pendent jurisdiction.

The propriety of joining a claim based on federal law with a claim based on state law derives from Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1938), and United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). See also Moor v. County of Alameda, 411 U.S. 693, 710–717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

*Gibbs* held that:

"[p]endent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made,' * * * and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'." United Mine Workers v. Gibbs, *supra*, 383 U. S. at 725, 86 S.Ct. at 1138 [Emphasis in original].

As to the existence of this judicial power, three considerations inhere:

1) "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court;"

2) "[t]he state and federal claims must derive from a common nucleus of operative fact;" and

3) the claims of the plaintiff, putting aside characterizations as to state or federal, should be of the kind that plaintiff would ordinarily be thought to bring them all in one judicial proceeding.[2]

1. As used hereinafter "defendants" shall refer to the moving parties only unless the context otherwise requires.

2. The third consideration may be read as an extension of the common nucleus requirement. That is to say that even if doubt exists as to a common nucleus, if the claims are so interrelated that they could be fairly and efficiently disposed of in one lawsuit, then pendent jurisdiction exists.

When these elements coalesce, the Court has the *power* to hear the pendent claim. Whether it chooses to exercise that power is another matter that will be considered later.

Defendants argue that this Court is without the power to hear the pendent claim in the present case. The basis of their argument centers on the second consideration in the *Gibbs* test, the "common nucleus of operative fact" requirement. They contend that plaintiff has alleged two causes of action, not one, which derive from two separate nuclei of operative facts. The first cause of action, they argue, arose from the "willful and wanton refusal" of the defendant Sheriff and County Commissioners to provide needed medical care and attention to the deceased in violation of his constitutional rights. The second and third causes of action arose out of the alleged negligence of the doctors and hospital in providing medical care to the decedent. Thus separated, or so it is argued, these sets of facts fail to provide the common nucleus of operative fact which is essential to the existence of pendent jurisdiction under the *Gibbs* test.

There is another facet to this case raised by the arguments of the defendants which affects the Court's jurisdiction. The defendants to the state claim are not named as defendants to the federal claim. The question is therefore presented as to whether this Court has the power to hear and decide a claim under pendent jurisdiction against a pendent party even though there are no independent grounds for federal jurisdiction over the pendent party. To resolve this question, it is first necessary, in the view of this Court, to decide whether there is a common nucleus of operative fact, as well as a substantial federal claim.

In order to decide whether there is a common nucleus of operative fact, this Court must look to the complaint alone since there are no affidavits, interrogatories or depositions to guide us. Moreover, the complaint should be construed in light of the function of pleading under the Federal Rules of Civil Procedure. Rule 8(a) thereof requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Technical forms of pleading are abolished by Rule 8(e)(1). Pleading in the alternative is specifically permitted, as are inconsistent theories of relief. Rule 8(f) further commands that all "pleadings shall be so construed as to do substantial justice." Rule 10 requires that claims founded on separate transactions or occurrences need be stated in separate counts only whenever separation facilitates clarity; but the rule permits separate statements in pleadings to be adopted by reference in different parts of the same pleading. These rules apply to all types of claims, with certain exceptions not applicable here.[3]

It is clear from these rules that the function of pleading is to give an adversary fair notice of the claim being asserted. See 2A Moore's Federal Practice, ¶ 8.13, and cases cited therein. Pleading is no longer to be a trap for the unskilled and the unwary. As Mr. Justice Black has said:

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

Read against this background, it is not so clear to this Court that this complaint sets forth two separate causes of action distinguished by two separate common nuclei of operative fact. Surely it is a fair construction of the complaint to read it to allege one cause of action comprised of varying occurrences which altogether constitute one common nucleus of operative fact. It may well be, and this Court expresses no opinion

3. *See, e. g.*, Rules 9 and 71.

whatever, that discovery and the proof at trial would show that the alleged malpractice of these defendants and the alleged denial of medical care by the defendant Sheriff and County Commissioners are so intermingled as to constitute one factual pattern. If so, it is clear that the *Gibbs* text has been met. The point is since the second count adopts the first count by reference, the complaint can be fairly read to allege such a theory of recovery. Therefore this Court is of the opinion that the requisite common nucleus of operative fact as to the state and federal claims exists in the· present case. We are thus faced with the question of whether jurisdiction exists as to pendent parties.

The most recent case of the Supreme Court dealing with pendent jurisdiction is Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). That case involved a suit under 42 U.S.C., § 1983, against the county and several police officers, as well as pendent state tort claims against the same defendants. The Supreme Court affirmed the District Court's dismissal of the § 1983 claim against the county and its refusal to exercise pendent jurisdiction against the county on the state claim. But the Court specifically refused to decide whether a district court has the power under pendent jurisdiction to hear state law claims against a pendent party. *Id.* at 715, 93 S.Ct. 1785. This Court must therefore turn elsewhere for guidance.

As the Supreme Court noted[4] the United States Courts of Appeals have generally sustained application of pendent jurisdiction against a pendent party. See Almenares v. Wyman, 453 F.2d 1075 (2nd Cir. 1971); Nelson v. Keefer, 451 F.2d 289 (3rd Cir. 1971); Stone v. Stone, 405 F.2d 94 (4th Cir. 1968); Connecticut General Life Ins. Co. v. Craton,

405 F.2d 41 (5th Cir. 1968); F. C. Stiles Contracting Co. v. Home Insurance Co., 431 F.2d 917 (6th Cir. 1970); Hatridge v. Aetna Casualty · & Surety Co., 415 F.2d 809 (8th Cir. 1969).·

The Sixth Circuit has dealt with pendent party cases on at least three occasions. *See also,* Beautytuft, Inc. v. Factory Ins. Ass'n, 431 F.2d 1122 (1970); and Patrum v. City of Greensburg, 419 F.2d 1300 (6th Cir. 1969). The *Patrum* case involved a suit under § 1983 against several police officers and a state tort claim against the city for which the policemen worked. The District Court dismissed the state claim against the city since it felt no justification for the exercise of pendent jurisdiction. The Sixth Circuit affirmed the District Court decision, but it did not expressly decide whether pendent jurisdiction exists over a pendent party. Rather, the Sixth Circuit held that dismissal was within the proper exercise of the District Court's discretion.

The leading decisions denying jurisdiction over a pendent party are Hymer v. Chai, 407 F.2d 136 (9th Cir. 1969); and Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964). *Hymer·* was based on a pre-*Gibbs* decision of the same circuit,[5] and is therefore of doubtful validity. Moreover, it involved a personal injury claim by a husband to which a wife sought to attach a loss of consortium claim for $7,500.

*Wojtas,* however, involved a suit under § 1983 against several police officers and a state common law tort claim against their municipal corporation employer. The District Court dismissed the claims against the city and the Seventh Circuit affirmed its decision. The Circuit Court based its reasoning on the Hurn v. Oursler[6] "cause of action" test which was subsequently discredited in *Gibbs* as being "unnecessarily grudging."[7] Therefore this Court does not

4. Moor v. County of Alameda, 411 U.S. 693, 713, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

5. Kataoka v. May Dept. Stores, 115 F.2d 521 (9th Cir. 1940).

6. 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

7. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

find the Circuit Court decisions denying pendent party jurisdiction to be particularly persuasive.

Several district court decisions have upheld pendent party jurisdiction, and among the most recent is Eidschun v. Pierce, 335 F.Supp. 603 (S.D.Iowa 1971). Significantly *Eidschun* also involved a suit under § 1983 against several police officers and state tort claims against, *inter alia,* a city, the employer of the officers. The city moved to dismiss the claims against it, arguing that the District Court had no jurisdiction over the city. In an extensive opinion, the Court analyzed the decisions upholding jurisdiction over a pendent party. The Court could only discover four reported cases post-*Gibbs,* which "touch[ed] upon the propriety of bringing in additional defendants under the doctrine of pendent jurisdiction."[8] *Id.* at 610. It concluded that the four decisions were decided on their own unique facts and that *no* case decided after *Gibbs,* and which used the *Gibbs* criteria as to the existence of jurisdictional power, had held that a federal district court does *not* have the power to hear a pendent claim against a pendent party. The Court then decided that it did have the power to hear the claims against the pendent party and proceeded to consider whether it should exercise that power.

A significant number of the cases where pendent party jurisdiction has been upheld have involved a defect in the amount in controversy requirement in diversity cases. *See e. g.,* F. C. Stiles Contracting Co. v. Home Insurance Co., 431 F.2d 917 (6th Cir. 1970); Beautytuft Inc. v. Factory Ins. Ass'n, 431 F.2d 1122 (6th Cir. 1970); Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809 (8th Cir. 1969); Stone v. Stone, 405 F.2d 94 (4th Cir. 1968); Johns-Manville Sales Corp. v. Chicago Title & Trust Co., 261 F.Supp. 905 (E.D.Ill. 1966). It is also true that several of the cases denying pendent party jurisdiction involved suits under § 1983. *See e. g.,* Patrum v. City of Greenburg, 419 F.2d 1300 (6th Cir. 1969); Wojtas v. Village of Niles, 334 F.2d 797 (7th Cir. 1964); Payne v. Mertens, 343 F.Supp. 1355 (N. D.Cal.1972); Barrows v. Faulkner, 327 F.Supp. 1190 (N.D.Okl.1971). No good reason suggests itself to this Court as to why pendent jurisdiction exists in cases involving a defect in the amount of controversy requirement and why it does not exist in cases involving the Civil Rights Act.[9]

In addition to these court decisions, some of the law reviews have taken the position that pendent jurisdiction, in the sense of judicial power, exists where pendent parties are concerned.[10] Their reasoning is generally based on the same considerations which were cited in *Gibbs* as justifying the exercise of pendent jurisdiction. They argue that the better view is to recognize the existence of the power to hear a pendent claim against a pendent party; and where in a particular case it appears that requiring a pendent party to litigate a particular case will work an injustice, the Court can simply decline to exercise its jurisdiction. One recent perceptive student piece points out that the very considerations which underlie the existence of pendent jurisdiction in the first place, *viz.,* conservation of judicial energy and the avoidance of multiple suits, argue as well for its existence against pendent

8. Patrum v. City of Greensburg, *loc. cit. supra;* Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3rd Cir. 1968); Shannon v. United States, 417 F.2d 256 (5th Cir. 1969); and Latch v. T.V.A., 312 F.Supp. 1069 (N. D.Miss.1970).

9. We are not unaware of the ever-increasing duty which the Civil Rights Acts are called upon to give, especially § 1983. Obviously there is an opportunity for an irritant to the federal system if the Civil Rights Acts, which apply particularly to states and state officials, are used as a vehicle to bring claims in federal courts which would not otherwise be there.

10. *See e. g.,* Note, UMW v. Gibbs and Pendent Jurisdiction, 81 Harvard L.Rev. 657, 664 (1968); Baker, Toward a Relaxed View of Federal Ancillary Jurisdiction, 33 U.Pitt. L.Rev. 759 (1972); Note, Section 1983: Governmental Immunity and Pendent Jurisdiction, 4 U.Tol.L.Rev. 201, 216–228 (1973).

parties.[11]  A blanket refusal to recognize the power may result in litigants and witnesses traveling back and forth from state to federal court, even though no unfairness to defendants otherwise exists, and much of the same proof is present in two or more different lawsuits.[12]

In the case *sub judice* it is apparent that a substantial federal claim is being asserted, and as we have previously concluded *supra,* the claims being asserted against all the defendants derive from a common nucleus of operative fact.  We also conclude that the relationship between the state and federal claims, based on the allegations in the complaint, show that there is but one "case" before the Court.  Accordingly, in the sense of judicial power, we hold that this Court has jurisdiction over the claims being asserted against the moving defendants.  We now proceed to decide whether the Court should exercise that power.

The *Gibbs* court began by noting that the power of pendent jurisdiction " * * * need not be exercised in every case in which it is found to exist." [13]   Clearly it is a discretionary matter, whose use must be justified; and

" * * * [i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them * * * ."[14]

The Court then discussed situations in which exercise of pendent jurisdiction may or may not be appropriate.  Taken together, these various situations have a common thread running through them, and it is this: In the usual situation the issue of pendent jurisdiction will be presented at the pleadings stage when care should be exercised in construing complaints so as to deny plaintiffs a forum; but the question is not put to rest until discovery has proceeded so that the precise issues have been developed for trial.  It is then, at this latter stage, that the Court is in a better position to decide fairly whether state issues predominate, whether the federal claim lacks substance, or whether there is a likelihood of jury confusion which would result from considering widely disparate legal theories of relief.  Indeed the Court has plainly said:

"The question of power will ordinarily be resolved on the pleadings. *But the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation.*" [15]

From this it is clear that the appropriate course, at this stage of the proceeding, is for this Court to assert its jurisdiction over all the claims made against all the defendants in the present case.  It is not yet clear that either the federal or state claims will predominate.  The federal claim appears to have its own substance.  And whether or not there is any opportunity for jury confusion cannot be ascertained as of now.  It is true that there may be some inconvenience for these moving defendants in traveling to a relatively distant federal court, but that must be balanced against forcing the remaining parties as well as witnesses to travel to and fro from state to federal court to litigate issues that

11. Note, Section 1983: Governmental Immunity and Pendent Jurisdiction, 4 U.Tol.L.Rev. 201, at 227 (1973).  *See also,* Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L. Ed.2d 442 (1970).

12. It should also be noted that the Federal Rules of Civil Procedure already contain provisions which have striking similarity to a suit involving pendent parties.  *See e. g.,* Rule 14 which permits a defendant to bring a third party over whom the Court may have no independent grounds for jurisdiction.

13. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

14. *Id.*

15. *Id.* at 727, 86 S.Ct. at 1139 [Emphasis supplied]. *See also,* Moor v. County of Alameda, *op. cit. supra,* 411 U.S. at 716–717, 93 S.Ct. 1785, 36 L.Ed.2d 596.

may be unrelentingly intertwined. Accordingly, the Court will assert its jurisdiction as to the claims against the pendent parties.

We wish to emphasize that this does not irrevocably settle the jurisdictional matter. Should it appear after discovery has gone its way that the state claims against these defendants predominate over all others, or that plaintiff's only theory of relief rests on the § 1983 claims against the Sheriff and County Commissioners, or that either theory is tenable but there exists a real possibility of confusing a jury, then this Court will reconsider the jurisdictional question. Indeed, as *Gibbs* pointed out:

> " \* \* \* recognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." [16]

We deem this to be particularly appropriate as a procedure in a case involving the Civil Rights Act and a common law negligence claim whose theoretical underpinnings are so divergent.

Defendants' only remaining contention is that the plaintiff's claim against them must be dismissed for failure to state a claim on which relief can be granted. It is well known that the standard here is that plaintiff must be able to prove no set of facts which in support of his claim would entitle him to relief and that the Court must construe the complaint liberally. Haines v. Kerner, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); L'Orange v. Medical Protective Co., 394 F.2d 57 (6th Cir. 1968). It is obvious from our previous discussion that dismissal for failure to state a claim would be inappropriate at this time. Hence this Court declines to do so.

For all of the foregoing reasons, the motion to dismiss is hereby denied, and the pleadings should continue. The cause shall be set down for the next pretrial list.

It is so ordered.

---

16. United Mine Workers v. Gibbs, *supra*, 383 U.S. at 727, 86 S.Ct. at 1139.