United States Court of Appeals,

Fifth Circuit.

No. 92-2363.

In the Matter of Bobby Newton BRADLEY, Debtor.

Bobby Newton BRADLEY, Appellant,

v.

Philip W. BARNES, Individually and in his capacity as Commissioner of Insurance of the State of Texas, Appellee.

April 29, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before WISDOM and DUHÉ, Circuit Judges and DOHERTY[*], District Judge.

WISDOM, Circuit Judge:

ear the plaintiff's claim. . . . . . . . . . . . . . .W. . . . .e . . . . . . . . . h. . . . .o. . . . .l. . . . d. . . . . . . . . t . . . .h . . . .a . . . .t. . . . . . . . . . . . . the bankruptcy court has subject matter jurisdiction. We reverse the judgment of the district court and remand this case to the district court.

I.

Bobby Newton Bradley sold insurance in Texas. On February 2, 1987 he sought relief from his debts as a bankrupt under Chapter 7 of the Bankruptcy Code. On August 10, 1988, he received his discharge in bankruptcy. One of the creditors listed in his bankruptcy petition was Dr. Leopold Villegas. In December 1989, the Commissioner of Insurance of the State of Texas (Commissioner) commenced proceedings to revoke Bradley's license as an insurance agent because he had allegedly defrauded Villegas by accepting his money but failing to remit the premiums to him. Villegas was listed in the Chapter 7 proceeding, so it would seem that his claim had been fully discharged. The Insurance Commission and Bradley agreed on March 23, 1990 that Bradley's license would not be revoked if he paid Villegas $18,000 ($1,500 a month for twelve months), which would constitute complete restitution for Villegas. The last sentence of this order between the Commissioner and

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

Bradley states that if Bradley "failed to make such restitution in the full amount within the time herein specified, Bobby Newton Bradley's Group I, Legal Reserve Life Insurance Agent's license, shall be revoked". Bradley had the assistance of counsel at the time he entered into this agreement.

Bradley failed to adhere to the payment schedule and alleges that he was informed through his state representatives that the Commissioner would not renew his license. At this time, the Commissioner has not instituted proceedings to revoke Bradley's license. Bradley filed suit in the United States Bankruptcy Court for the Southern District of Texas alleging that the March 23, 1990 order violated the anti-discrimination provision of the bankruptcy code (11 U.S.C. § 525).[1] The bankruptcy court dismissed the case with prejudice for want of jurisdiction and the district court affirmed. This appeal followed.

## II.

We review a dismissal for want of subject matter jurisdiction de novo.

The district judge affirmed the bankruptcy court's holding of lack of subject matter jurisdiction because "the debtor's decision to enter into a settlement with the Commissioner in order to retain his license is clearly conduct that occurred after the discharge and final resolution of the bankruptcy and cannot therefore be related to the debtor's original bankruptcy claims". Generally, jurisdiction over bankruptcy proceedings ceases with the closing of the bankruptcy estate, but Congress has stated that in some instances jurisdiction continues after the estate is closed because the proceeding would still "arise under" title 11. A § 525 prejudice proceeding was the example Congress used of such an instance.[2] This follows from the principle underlying § 525, for if it protects former bankrupts from subsequent discrimination which results from previously discharged debts, then the cases must occur

---

[1] § 525(a) states that, "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title ... solely because such bankrupt ... has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act."

[2] U.S.Code Cong. & Admin.News 1978, at 5787, 5963, 6401.

after the resolution of the bankrupt's estate.[3]

The jurisdictional grant in § 525 is broad. One bankruptcy court has stated: "No court in the realm holds such a wide subject matter jurisdiction as does the Bankruptcy Court ... the entirety of § 525, every word, is utterly sweeping."[4] We are not aware of any bankruptcy court, with the exception of the one in this case, which has dismissed a possible § 525 violation on the basis of lack of subject matter jurisdiction. There are numerous cases in which a court has found *no* violation of § 525[5], but if there is a potential violation of § 525, then the court must take jurisdiction. Section 525 does not prohibit a state from denying or revoking a license based upon a determination that the public safety would be jeopardized by granting or allowing continued possession of a license, but it does prohibit a state from exacting a discharged debt as the price of receiving or retaining a license.[6]

The Commissioner in the order of March 23, 1990 in lieu of revoking Bradley's license ordered him to pay Dr. Villegas the amount owed him, an amount which it seems was discharged in Bradley's August 10, 1988 Chapter 7 bankruptcy. We use the term "seems" because the Commissioner suggests that the Villegas debt was procured by fraud and therefore was not discharged per 11 U.S.C. § 523. Unless Villegas was improperly notified of the Chapter 7 proceeding, his opportunity to challenge the discharge because of fraud would almost certainly have expired by now unless he received an extension by the bankruptcy court.[7] The record before us indicates neither improper notification nor any extension or any other explanation of how the Commissioner's current suggestion of fraud bears on the 1988 discharge. We leave it to the bankruptcy court on remand to make any necessary further inquiries and holdings concerning fraud.

A second inquiry which the bankruptcy court must make is the effect of Bradley's consent to

---

[3] § 525 also applies to debtor's currently in bankruptcy, but in that instance this issue of jurisdiction after the closing of the estate would not arise.

[4] *Applegate v. March,* 64 B.R. 448, 450 (Bkrtcy.E.D.Va.1986).

[5] *See e.g., Matter of Holder,* 40 B.R. 847 (Bkrtcy.E.D.Wis.1984).

[6] *Holder* states this impermissible quid pro quo. *Id.* at 850.

[7] *In re Barley,* 130 B.R. 66, 69 (Bkrtcy.N.D.Ind.1991). *See* Bankruptcy Rule 4007(c).

the March 23, 1990 order. Even if the order would otherwise violate § 525, Bradley's consent (especially as he had the assistance of counsel) may negate any § 525 violation. We make no comments on the merits of the consent issue.

III.

At this stage it is unclear whether a violation of the anti-discrimination provision of the Bankruptcy Code has occurred. We make the limited holding that Bradley has offered sufficient evidence so that the bankruptcy court must take subject matter jurisdiction to determine whether the Commissioner's March 23, 1990 order violates 11 U.S.C. § 525.

REVERSED and REMANDED.