In re COUNTY SCHOOLS, INC., Debtor.

Joseph S. MONACO, Jr., Joseph
M. Monaco, and Domenic
C. Monaco, Plaintiffs,

v.

UNITED STATES DEPARTMENT
OF EDUCATION, Defendant.

Bankruptcy No. 91–52469.
Adv. No. 93–5200.

United States Bankruptcy Court,
D. Connecticut.

Jan. 14, 1994.

Suzanne B. Sutton, Kaligian & Sutton, Orange, CT, for plaintiffs.

Edmund J. Trepacz, II, Office of Gen. Counsel, U.S. Dept. of Educ., Washington, DC, Deirdre A. Martini, Asst. U.S. Atty., Bridgeport, CT, for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT FOR VIOLATION OF 11 U.S.C. § 525(a)

ALAN H.W. SHIFF, Bankruptcy Judge.

The sole issue is whether I have authority to hear a § 525(a) proceeding brought by the non-debtor associates of a corporate chapter 7 debtor. For the reasons that follow, I conclude that I do not.

## BACKGROUND

This case was commenced under chapter 11 on September 12, 1991. On December 26, 1991, it was converted to chapter 7 on the debtor's motion. The debtor is a vocational school which, prior to the conversion, participated in various student loan programs sponsored by the federal government. The plaintiffs are former owners or officers of the debtor. On May 10, 1993, each plaintiff received a notice from the United States Department of Education (the "Department") that debarment proceedings would be commenced against them. The purpose of those proceedings is to exclude the plaintiffs from participation in federal programs because they allegedly are not "responsible." The Department has not attempted to take any such action against the debtor. On September 8, 1993, the plaintiffs commenced this adversary proceeding, seeking to enjoin the Department from maintaining the debarment proceedings on the ground that they violate 11 U.S.C. § 525(a).

## DISCUSSION

11 U.S.C.A. § 525(a) (West 1993) provides in relevant part:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

28 U.S.C.A. § 1334(b) (West 1993) provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C.A. § 157 (West 1993) provides in relevant part:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments....

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.

On September 21, 1984, the United States District Court for the District of Connecticut entered an order that referred to the bankruptcy judges for this District,

subject to the remaining provisions of Section 157, ... all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under title 11, U.S.C., pending on June 27, 1984, or filed on or after June 28, 1984....

■ Although no party has raised the issue of this court's subject matter jurisdiction, "because subject matter jurisdiction is of paramount importance, a court may raise the issue *sua sponte.*" *Trager v. Internal Revenue Serv. (In re North Star Contracting Corp.),* 146 B.R. 514, 518 (Bankr.S.D.N.Y. 1992); Rule 7012 Fed.R.Bankr.P., Rule 12(h)(3), Fed.R.Civ.P.

## I. Jurisdiction Under the Bankruptcy Amendments and Federal Judgeship Act of 1984

Section 157, as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), was the congressional reaction to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The plurality opinion in *Marathon* stated that

[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights.... The former may well be a "public right," but the latter obviously is not.

*Id.* at 71, 102 S.Ct. at 2871.

BAFJA was intended to limit the authority of non-Article III bankruptcy judges, so that in the absence of consent, *see* § 157(c)(2), they could only enter dispositive orders in proceedings that lie at the "core of the federal bankruptcy power." Under that scheme, bankruptcy judges were not authorized to hear proceedings that were not in some way related to a bankruptcy case.

The holding in *Marathon* suggests no concern over the constitutionality of the scope of bankruptcy jurisdiction defined by Congress; its concern is with the *placement* of that jurisdiction in non-Article III courts. In response to *Marathon,* Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the latter.

*Wood v. Wood (Matter of Wood),* 825 F.2d 90, 93 (5th Cir.1987) (emphasis in original); *accord Pine Assocs., Inc. v. Aetna Casualty & Sur. Co. (In re Pine Assocs., Inc.),* 733 F.2d 208, 209 (2d Cir.1984). *Wood* further concluded that in order to determine the extent of a bankruptcy judge's authority to hear a proceeding,

it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to

determine whether a matter is at least "related to" the bankruptcy.

*Id.; accord Gallucci v. Grant (In re Gallucci),* 931 F.2d 738, 742 (11th Cir.1991) ("[I]f the resolution of litigation cannot affect the administration of the estate, the bankruptcy court does not have jurisdiction to decide it."); *Sonnyco Coal, Inc. v. Bartley (In re Sonnyco Coal, Inc.),* 89 B.R. 658, 663 (Bankr. S.D.Ohio 1988) (The bankruptcy court's "jurisdiction by reference extends at its most remote nexus only to proceedings which are related to a bankruptcy case."), *aff'd in relevant part,* 131 B.R. 799 (S.D.Ohio 1990).

Thus *Wood* clarifies *Marathon* by holding that the placement of bankruptcy jurisdiction with bankruptcy judges is limited to those proceedings that are at the very least related to the bankruptcy case. The logical extension of *Wood* is that bankruptcy judges may not hear proceedings that "arise under" title 11 if they do not have some effect on the administration of the bankruptcy case. Put another way, the mere fact that a proceeding falls within the penumbra of proceedings that "arise under" title 11 does not *per se* make it a core proceeding and does not confer authority on bankruptcy judges unless there is a nexus between the proceeding and the case.

The related and core authority of bankruptcy judges may properly be viewed as concentric circles. Related proceedings form the larger circle, defining the broadest reach of the judges' authority; core proceedings form the smaller circle at the heart of the related matters, as to which the judges have authority to enter dispositive orders without the parties' consent. *See Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183, 190 (5th Cir.1990) ("Whatever else a core proceeding

must be, it must involve a decision that ultimately affects the distribution of the debtor's assets."); *Official Creditors' Comm. of Prods. Liability and Personal Injury Claimants v. Int'l Ins. Co. (In re Pettibone Corp.),* 135 B.R. 847, 851 (Bankr.N.D.Ill.1992) ("[A] matter cannot be unrelated to the bankruptcy estate and yet still be a 'core' proceeding."). Under the BAFJA scheme, then, bankruptcy judges may hear only proceedings that are either core or related, and the question evolves: is this proceeding a core proceeding or at least a proceeding related to this case.

## A. Core Proceedings

Proceedings that arise in a case under title 11 are core proceedings. *See Matter of Wood, supra,* 825 F.2d at 96–97. In the literal sense, any proceeding filed in a case arguably arises in that case. Courts have consistently held, however, that a proceeding does not arise in a title 11 case within the meaning of § 157(b)(1) merely because the proceeding was filed in that case. To conclude otherwise would give bankruptcy judges jurisdiction over all proceedings and nullify the distinction mandated by *Marathon* and provided by BAFJA. *See, id.* at 97; *Hoffman v. Ramirez (Matter of Astroline Communications Co. Ltd. Partnership),* 161 B.R. 874, 878 (Bankr.D.Conn.1993); *J.T. Moran Fin. Corp. v. Phonetel Technologies, Inc. (In re J.T. Moran Fin. Corp.),* 119 B.R. 447, 450 (Bankr.S.D.N.Y.1990).[1]

Similarly, proceedings that arise under title 11 are usually core, and are generally described as those proceedings "that involve a cause of action created or determined by a statutory provision of title 11." *Matter of Wood, supra,* 825 F.2d at 96; *Gagel v. King-*

---

1. *Wood* held that a matter arises in a bankruptcy case only if it could have no existence outside of the case. 825 F.2d at 97. The Second Circuit in *Ben Cooper, Inc. v. Insurance Co. of the State of Pennsylvania (In re Ben Cooper, Inc.),* 896 F.2d 1394, 1400 (2d Cir.), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991) extended the reach of core jurisdiction to post-petition contracts with debtors in possession because those contracts "are integral to the estate administration from the date they are entered into."

*Id.,* 896 F.2d at 1399. *Ben Cooper* declined to follow *Wood* to the extent that the *Wood* formulation conflicted with its holding. However, *Ben Cooper* is consistent with *Wood* in holding that core jurisdiction is limited to proceedings that are integral to estate administration; *Ben Cooper* simply recognized that such proceedings may include those which could exist outside of the bankruptcy context, but which by virtue of being entered into post-petition become closely related to estate administration. As noted, *infra* at pp. 430–31, the instant proceeding is not at all related to the administration of the bankruptcy case, and therefore cannot be said to arise in that case.

ston–Greene Partners, Ltd (In re GWF Inv., Ltd.), 85 B.R. 771, 775 (Bankr.S.D.Ohio 1988). But just as not all proceedings that literally arise in a case are necessarily core, it is also apparent that not all proceedings that literally arise under a title 11 provision are necessarily core. Indeed, § 157(b)(1) empowers bankruptcy judges to hear and determine only *core* proceedings which arise under title 11, with the implication that a proceeding could arise under title 11 and yet not be a core proceeding.[2] The question then becomes, what is the defining characteristic of a core proceeding?

Section 157(b)(2) provides a non-exclusive list of proceedings deemed to be at the "core of the federal bankruptcy power." Included are two so-called "catch-all" provisions, i.e. § 157(b)(2)(A) ("matters concerning the administration of the estate") and § 157(b)(2)(O ) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship"). In the absence of a precise definition, courts have generally based their determination of whether a proceeding is core on an *ad hoc* assessment of its relationship to the case. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1102 (2d Cir.1993) (a pre-petition breach of contract claim by the debtor against a defendant who had filed no claim in the bankruptcy case was non-core even though it arguably concerned the administration of the estate within the meaning of § 157(b)(2)(A)); *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),* 896 F.2d 1384, 1389 (2d Cir.1990) ("The relevant inquiry is whether the nature of this adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power."); *In re North Star Contracting Corp., supra,* 146 B.R. at 519 ("Whether or not a matter is core de-

pends upon its relationship to the bankruptcy court's basic function in administering the debtor's estate."). For example, a contract dispute governed by state law, typically a related proceeding at best, can become a core proceeding if the contract was entered into post-petition, because the "adjudication of such claims is an essential part of administering the estate." *Ben Cooper, Inc. v. Insurance Co. of the State of Pennsylvania (In re Ben Cooper, Inc.),* 896 F.2d 1394, 1400 (2d Cir.), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). Similarly, a proceeding by the debtor against a creditor based on various state law claims may be a core matter, if most of the allegedly improper acts by the creditor occurred post-petition and impacted directly on the administration of the estate. *Germain v. Connecticut Nat'l Bank (Matter of O'Sullivan's Fuel Oil Co., Inc.),* 88 B.R. 17, 20–21 (D.Conn. 1988).

Accordingly I conclude that a proceeding is a core proceeding only if it is integral, and not merely tangential, to the estate administration. *See In re Ben Cooper, Inc., supra,* 896 F.2d at 1398–99. In that sense there must be a link in the nature of a symbiotic relationship between the proceeding and the case in order for the former to qualify as a core proceeding in the latter.

## B. Related Proceedings

A proceeding is related to a bankruptcy case and thus within the outside limits of matters a bankruptcy judge may hear only if "its outcome might have any 'conceivable effect' on the bankrupt estate." *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114 (2d Cir.1992); *see Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).[3]

---

**2.** The district court is not so constrained. *See* § 1334(b).

**3.** In *Turner v. Erniger (In re Turner),* 724 F.2d 338, 341 (2d Cir.1983), the court held that a debtor's conversion action was not within the bankruptcy court's "related to" jurisdiction under the applicable emergency resolution because the action had no "significant connection" to the

bankruptcy case. In *In re Cuyahoga Equip. Corp., supra,* 980 F.2d at 114, the court explained that the test for determining whether a proceeding had a significant connection to the bankruptcy case was whether it might have any conceivable effect on the bankruptcy estate. Thus, either a "conceivable effect" or a "significant connection" would satisfy the Second Circuit's test for "related to" jurisdiction. *Id.*

An action between nondebtors is regarded as related to a bankruptcy case if its outcome would affect the amount of property available for distribution to the creditors of the bankruptcy estate or the allocation of property among such creditors, or if the resolution of the action would alter the debtor's rights or liabilities, such civil proceeding will be regarded as related to the bankruptcy case.

*In re North Star Contracting Corp., supra,* 146 B.R. at 519. Therefore, while the debtor need not be a party in order for a proceeding to be related, it would not be unless its "outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990).

## II. Section 525(a) Proceedings

Section 525(a) was enacted as part of the Bankruptcy Reform Act of 1978 (the "Reform Act"). That subsection is unusual among title 11 provisions in that it affords standing to those "associated with" a debtor or former debtor to prosecute discrimination actions. The legislative history of the section indicates that it was designed primarily to protect the integrity of the *debtor's* discharge and fresh start:

> This section is *additional debtor protection.* It codifies the result of *Perez v. Campbell,* 402 U.S. 637 [91 S.Ct. 1704, 29 L.Ed.2d 233] (1971), which held that a State would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.... This section permits further development to prohibit actions by ... organizations that can seriously affect *the debtors' livelihood or fresh start* .... The effect of the section ... is to strengthen

the anti-reaffirmation policy found in section 524(b). Discrimination based solely on nonpayment could encourage reaffirmations, contrary to the expressed policy.

H.R.Rep. No. 595, 95th Cong., 1st Sess., 366–67, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6322–23 (emphasis added).

One of the matters concerning the administration of a bankruptcy case is whether an eligible debtor is entitled to a discharge and thus an economic fresh start. *See* § 157(b)(2)(I), (J). The success of that fresh start may well depend upon the protection of § 525. Accordingly, courts have generally held that proceedings brought *by the debtor or former debtor* seeking a determination that their discharge has been or will be impaired by a violation of § 525 are core proceedings, and dispositive orders may enter even when those proceedings are commenced after the bankruptcy case has been closed. *See, e.g., Bradley v. Barnes (Matter of Bradley),* 989 F.2d 802, 804 (5th Cir.1993) (the bankruptcy court had subject matter jurisdiction over a § 525 proceeding commenced after the granting of the debtor's discharge in a chapter 7 case);[4] *Jacobs v. State of Oklahoma (In re Jacobs),* 149 B.R. 983, 989 (Bankr.N.D.Okl.1993) (a proceeding by an individual chapter 7 debtor to stay revocation of the debtor's insurance agent's license commenced after the closing of the case affected the adjustment of the debtor-creditor relationship and thus was core). Further, where the fresh start will be achieved through reorganization, e.g. in cases under chapter 11, § 525 proceedings brought by the debtor are core where they impact upon the administration of the case. *See, e.g., Blue Diamond Coal Co. v. Angelucci (In re Blue Diamond Coal Co.),* 145 B.R. 895, 906 (Bankr.E.D.Tenn.1992) (a proceeding by a chapter 11 debtor to require reinstatement of the debtor's certificate of self insurance was a core proceeding); *Will Rogers Jockey & Polo Club, Inc. v. Oklahoma Horse Racing Comm'n (In re Will Rogers Jockey & Polo*

---

**4.** *Matter of Bradley* notes that the legislative history to the Reform Act suggests that Congress intended actions under § 525(a) to be cognizable by the bankruptcy court even after the case was closed. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 445, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6401. As discussed *supra,* BAFJA limited bankruptcy judges' authority to hear proceedings, so that the Reform Act legislative history is more properly applied to the scope of the *district court's* post-BAFJA "arising under" jurisdiction.

*Club, Inc.)*, 111 B.R. 948, 952 (Bankr. N.D.Okl.1990).

### III. The Instant Proceeding

■ The instant proceeding presents an anomalous situation: it "arises under" title 11 because it was brought under § 525, and it was referred to me under § 157(a) and the district court's order of reference, but since for the reasons that follow it is neither a core nor a related proceeding, I cannot hear it.

This is a chapter 7 case. As such, its goal is the orderly liquidation of the debtor, not its reorganization. The chapter 7 trustee has the sole control over the debtor's assets for the purpose of that liquidation. It is significant that the trustee here is not a party to and has not appeared in this proceeding. Further, because the debtor is a corporation, it is not entitled to a discharge and will not receive a fresh start. *See* § 727(a)(1). There is no allegation of discrimination against the debtor.[5] Should the plaintiffs succeed in preventing the Department from debarring them, that result may well inure to the plaintiffs' benefit in their other professional endeavors, but it will have no effect on either the distribution to the creditors of this estate or the debtor's rights and liabilities. There is no suggestion that the plaintiffs intend to infuse capital into this debtor or to seek to reconvert the case to a chapter 11 case. In a reorganization case, it is quite possible that allegedly discriminatory acts against co-owners or officers of a debtor entity could have a significant effect on the estate and could be so central to the administration of the case or the adjustment of the debtor-creditor relationship as to raise a § 525(a) proceeding to the level of a core matter. Those facts are absent here.

The instant proceeding is not core because it is not integral to the administration of this bankruptcy case. That result follows even though the plaintiffs claim that a title 11 provision entitles them to relief. *Cf. Cullen Elec. Co. v. Bill Cullen Elec. Contracting Co. (In re Bill Cullen Elec. Contracting Co.)*, 160 B.R. 581, 584–85 (Bankr.N.D.Ill.1993) (a priority dispute between secured creditors with liens on over-encumbered estate property was not related to the chapter 7 case and therefore could not be core even though it involved equitable subordination under § 510(c)). Although the filing of this bankruptcy case was a condition precedent to the plaintiffs' cause of action, that circumstance does not alone provide the requisite nexus between the case and the proceeding to make the proceeding core. *See Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.)*, 3 F.3d 306, 310 (9th Cir.1993) ("An action that arises *because of* a bankruptcy proceeding does not necessarily arise *under* the Bankruptcy Code."). Indeed, this proceeding is not even related to the case because it is impossible to conceive of any potential impact on that case. Cases such as *Matter of Bradley, supra*, 989 F.2d 802, are readily distinguishable in that in the instant proceeding, neither the debtor's discharge and opportunity for a fresh start nor its ability to successfully reorganize are implicated.

I do not hold that the plaintiffs may not maintain this action in a court with appropriate jurisdiction.[6] Section 525(a) on its face applies where the alleged discrimination is against those who have been associated with a debtor, irrespective of whether the debtor is an individual.[7] Section 525 is not, howev-

---

**5.** I note that, were the alleged discrimination against the debtor, the proceeding would likely be at least related to the case, as it would impact on the debtor's rights. That result could follow even if the debtor were a corporation or partnership in a chapter 7 case, as § 525(a) applies not only where the discrimination is based on the failure to repay a discharged or dischargeable debt, but also where it is based on the existence of the bankruptcy filing or on the debtor's insolvency. Indeed, I can think of no set of facts other than the one now before me, i.e. a proceeding commenced by associates of a chapter 7 debtor that is not an individual, under which a

§ 525(a) proceeding would not be at least arguably related to the bankruptcy case.

**6.** Section 157 obviously does not limit the district court's jurisdiction, whether derived from 28 U.S.C. § 1334(b) or another statute. *See, e.g., Thomas v. Dennis Real Estate, Inc.*, 1989 WL 114165 (E.D.Pa., Sept. 29, 1989) (the district court had federal question jurisdiction over a § 525 proceeding).

**7.** Unlike § 525(b), which applies only to individual debtors and their individual associates, § 525(a) applies to debtors and associates who

er, a jurisdictional statute. I am constrained by § 157 to hold that I lack authority to hear this proceeding.

### ORDER

For the foregoing reasons, this proceeding is dismissed, and IT IS SO ORDERED.

are "persons," thus affording standing to associ- ates of a corporate debtor. See § 101(41).